587 P.2d 1187

**Robert C. OQUITA, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Phelps Dodge Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 1731.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 15, 1978.

Rehearing Denied Oct. 5, 1978.

Review Denied Dec. 12, 1978.

Davis, Eppstein & Tretschok, P. C. by Robert W. Eppstein, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Evans, Kitchel & Jenckes, P. C. by James G. Speer, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

## OPINION

SCHROEDER, Judge.

This is a case like *Fletcher v. Industrial Comm'n,* 587 P.2d 757 (Ct.App.Ariz., filed Aug. 15, 1978), filed this day, involving a partially disabled mine employee who was discharged as a result of the general shutdown of mine operations.

In 1970, petitioner, Robert Oquita, injured his back while working as a miner for the respondent-employer, Phelps Dodge Corporation, in its Bisbee, Arizona, mine, the Copper Queen. His claim was closed with a fifteen percent unscheduled disability but with no loss of earning capacity,

because he returned to work as a miner at the same wage level. He continued to work as a miner until he was laid off in 1975 when the mine closed.

Petitioner then filed a request for a rearrangement pursuant to A.R.S. § 23–1044(F)(2). The Industrial Commission originally granted that request, finding a compensable loss of earning capacity. Upon the respondent's timely request for hearing, however, the matter went to hearings. On the basis of an extensive record, the hearing officer entered an award, affirmed on review, finding that petitioner was not entitled to any benefits. This petition for review followed.

The record shows that petitioner sought many jobs unsuccessfully, and was specifically rejected for a job with the city of Douglas because of his back injury. He eventually located temporary employment, paying minimal wages, with a federally funded program to aid the handicapped.

Petitioner undeniably has a fifteen percent industrial disability. However, the medical evidence with respect to his actual ability to do heavy mining work was conflicting. Guy B. Atonna, M. D., who had originally treated the petitioner, and who was also the physician who recommended that he not be employed by the city of Douglas because of his past medical history, testified that he could not do heavy work. Petitioner also testified that when he returned to work at the mine, he did so only with considerable assistance with the heavy work. Conflicting, at least in part, with this testimony was evidence from a mine superintendent that the duties performed by petitioner after his return to work were no lighter than the duties he performed before his accident. Another doctor, C. H. Willingham, M. D., who had also treated petitioner testified that he had not placed any restrictions on the amount of work which petitioner could do. There was also evidence, not seriously disputed, that the closure of the mine removed the largest source of relatively high paying work, and that all mine employees, whether able-bodied or disabled, were economically worse off after the closure than before.

■ The ultimate question to be decided by the hearing officer was whether petitioner, on the basis of the evidence presented, had demonstrated a loss of earning capacity attributable to his injury. A.R.S. § 23–1044(F)(2) specifically provides that compensation may be readjusted even where, as here, there has been no change in applicant's physical condition. However, compensation still must be based solely on loss of earning capacity "attributable to the injury." In this case, as in *Fletcher v. Industrial Comm'n*, 120 Ariz. 571, 587 P. 2d 757 (App.1978), the immediate circumstance prompting the application for rearrangement was termination of the applicant's prior employment for economic reasons, unrelated to his disability. As we held in *Fletcher*, it is not sufficient for an applicant in that situation to show only that he has suffered a loss of earnings and difficulties in finding reemployment. He must show that his subsequent difficulties were related to his disability. As we also held in *Fletcher*, an applicant should not automatically be denied benefits simply because he lost a prior job due to economic or other non-disability related factors.

■ We have carefully reviewed the hearing officer's findings in this case and conclude that the wrong test has been applied in denying compensation. The hearing officer viewed the two dispositive questions to be, first, whether the petitioner was physically able to do heavy work and, second, whether he lost his employment with the mine due to economic as opposed to physical reasons. The hearing officer found, after accepting Dr. Willingham's medical testimony, that the petitioner could do the work. He also found that "but for the closing" of the mine he would still be employed in the same capacity with the mine. Upon these findings he concluded that petitioner's unemployment was due to economic factors and denied compensation.

The net effect was to measure the petitioner's earning capacity by what he would earn if he found a job he was physically capable of performing. That is the stan-

dard which was once adopted by the Supreme Court in *Matlock v. Industrial Comm'n*, 70 Ariz. 25, 215 P.2d 612 (1950), and which was expressly rejected in *Schnatzmeyer v. Industrial Comm'n*, 77 Ariz. 266, 270 P.2d 794 (1954). The hearing officer thus improperly failed to take into account the substantial evidence which exists here, but which did not exist in *Fletcher*, that the petitioner's difficulties following the mine's closure in finding employment were caused at least in part by his disability.

The Commission should have considered the extent to which petitioner's difficulties in finding employment were related to his injury. As stated in *Ossic v. Verde Central Mines*, 46 Ariz. 176, 49 P.2d 396 (1935), and quoted with approval in *Schnatzmeyer*, the Commission should consider "whether and to what extent his injury is likely to deprive him of the ability to secure the work which he might do if he were permitted to attempt it." 46 Ariz. at 191, 49 P.2d at 402.

The award is set aside.

DONOFRIO and WREN, JJ., concur.