600 P.2d 752

**ARIZONA SAND & ROCK, Petitioner Employer,**

**Transport Indemnity Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Tommie B. Arnold, Respondent Employee.**

**No. 1 CA–IC 2064.**

Court of Appeals of Arizona, Division 1, Department C.

July 31, 1979.

Rehearing Denied Sept. 5, 1979.

Review Denied Sept. 25, 1979.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears, by Donald
L. Cross, Phoenix, for petitioner employer
and petitioner carrier.

John H. Budd, Jr., Chief Counsel, Phoe-
nix, for respondent The Industrial Commis-
sion of Arizona.

Charles M. Wilmer, P. C. by Charles M.
Wilmer, Phoenix, for respondent employee.

OPINION

HAIRE, Judge.

On this review of an award entered by
the Commission's hearing officer in a rear-
rangement proceeding, the carrier contends
that the hearing officer failed to apply rec-
ognized principles of finality in finding that
the respondent employee now suffers a loss
of earning capacity resulting from his in-
dustrial injury. From our review of the
record and the findings made in the award,
we agree, and for that reason the award
must be set aside in order that the matter
might be determined in accordance with
appropriate guidelines.

The respondent employee (claimant), a truck driver, injured his neck when he bumped his head on the roof of the cab of his truck in an incident that occurred on December 28, 1970. In February of 1975, the carrier determined that claimant's condition had become stationary as of January 29, 1975, with a permanent partial physical impairment. Thereafter, on June 13, 1975, the respondent Commission issued its "Findings and Award for Unscheduled Permanent Partial Disability" finding that claimant had sustained a five percent general physical functional disability as a result of the December 28, 1970 accident, and that the disability had not caused any reduction in claimant's earning capacity. No request for hearing was filed relating to this award, and it thus became final.

At this point a brief discussion of the factual and procedural events preceding the entry of the June 13, 1975 no loss of earning capacity award is necessary in order that the questions raised on this review might be considered in proper perspective. After claimant's 1970 injury he returned to his prior employment as a cement truck driver in May of 1971, and continued with this employment for approximately ten months until March of 1972, at which time he was taken off work for three months of conservative treatment relating to his neck injury. In June 1972 he returned to his cement truck driving job with his prior employer, Arizona Sand & Rock. He again worked for this same employer for fifteen months, until he was terminated for reasons unrelated to his industrial injury. He then went to work driving cement trucks for a different employer.

From September of 1973 until January of 1974 claimant again received conservative treatment relating to his 1970 neck injury. He then returned to work driving a cement truck for his new employer. It should be noted that in June of 1974 the claimant sustained a hernia while working for this new employer for which he filed a claim, received treatment, and returned to his regular work. He continued to work until his new employer went into bankruptcy in November of 1974, which bankruptcy resulted in the termination of his employment.

Claimant has not returned to work since the bankruptcy of his employer in November of 1974 resulted in his discharge. The record indicates that prior to the June 13, 1975 award claimant had developed complications from his hernia surgery (unrelated to the claim under consideration) and was to have two more hernia operations, as well as a prostate operation and removal of a kidney stone. Even though claimant was not actually working on June 13, 1975, the hearing officer who entered the award on that date obviously considered the claimant's return to his prior employment after the 1970 injury as persuasive evidence that *the 1970 injury* had not resulted in any loss of earning capacity. This is not to say that claimant was not disabled during this period. As found by the hearing officer in the proceedings now under review:

"6. The applicant testified that he has several unrelated medical conditions in addition to his neck problem which was the result of the industrial injury of December 28, 1970; that these other unrelated conditions are: diabetes, valley fever, tardy ulnar palsy of the left elbow and a problem with his left foot; that he did have three hernia operations, which were the result of a separate industrial injury of June 10, 1974, as well as a prostrate [sic] operation and removal of a kidney stone."

Based upon a combination of all his problems, claimant decided to retire in late 1976, and in January of 1977 he took an early pension from his union and also received a disability award from social security. In November of 1976 he had filed a petition to reopen the subject industrial claim, based upon new, additional or previously undiscovered disability or condition, alleging that his neck was hurting and that he needed further medical care. On July 15, 1977, the Commission's hearing officer entered his decision denying the petition to reopen, finding that:

"14. The evidence, considered in its entirety, did not establish that applicant

had sustained new or previously undiscovered disability or condition referable to the industrial episode of December 28, 1970."

Ten days later, on July 25, 1977, claimant again sought to reopen the December 28, 1970 claim, this time filing a "Petition for Rearrangement or Readjustment of Compensation". This petition for rearrangement was not based upon a change of physical condition, but rather was based upon A.R.S. § 23–1044F(2), which allows a reopening for the purpose of showing a reduction in earning capacity arising out of the injury where there has been no change in the claimant's physical condition.[1] This petition was initially denied by the Commission, but after hearing, the Commission's hearing officer entered an award finding that claimant had sustained a 62% reduction in his earning capacity as a result of the December 28, 1970 industrial injury. It is this award that is now the subject of review.

■ As we have previously indicated, the basic contention urged by the carrier on this review is that the hearing officer failed to apply recognized principles of finality in conducting the latest hearing and in finding that claimant now has incurred a reduction in his earning capacity as a result of the 1970 industrial injury to his neck. We see no need to discuss extensively in this opinion the principles of finality or res judicata applicable to workmen's compensation proceedings. These principles have been well developed in prior Arizona decisions, including this Court's recent opinion in *Phoenix Cotton Pickery v. Industrial Commission*, 120 Ariz. 137, 584 P.2d 601 (App.1978). As applied to this case, these principles require a holding that the Commission's award of June 13, 1975, constituted a binding determination that *at that time* claimant had no loss of earning capacity resulting from his 1970 injury, and that his physical limita-

tions resulting from the 1970 injury would not preclude his return to his employment as a truck driver, the work he was performing at the time of the 1970 injury.

■ The hearing officer's lack of appreciation of this basic principle is perhaps best exemplified by her Finding No. 20, as follows:

"20. Applicant's work history prior to the subject injury, his occupation at time of injury (cement truck driver), and his work history subsequent to the injury, have also been considered; that in considering applicant has engaged in the occupation of truck driver since 1947, the description of the physical requirements and activities engaged in by applicant in said occupation, it would not appear wholly unreasonable that applicant can neither return to his occupation of cement truck driver nor to an occupation driving a different type of truck."

This finding was directly contrary to the findings of the June 1975 award, which expressly found that claimant's physical limitations resulting from the 1970 injury would not preclude his return to his occupation as a truck driver at that time, and yet there was a complete lack of any medical testimony presented at the hearing evidencing a change in claimant's physical condition resulting from the 1970 injury and occurring after June 13, 1975. It appears that the hearing officer erroneously assumed that the filing of the petition for rearrangement had the effect of completely reopening the loss of earning capacity question *ab initio*, without any requirement that finality be accorded to the prior award of June 13, 1975. Such is not the law. Rather, in the absence of competent medical testimony showing a subsequent change in claimant's physical condition, the hearing officer was required to assume as a fact that claimant's physical limitations result-

---

1. While the actual allegations contained in claimant's petition for rearrangement are subject to the interpretation that he intended to show a change in physical condition, claimant did not introduce any medical evidence at the hearing, and affirmatively stated before the

Commission's hearing officer and in his answering brief filed in this appeal that he did not contend that there was a change in physical condition, and that he was seeking relief solely pursuant to A.R.S. § 23–1044F(2).

**452**

ing from the 1970 injury would not preclude his return to his prior employment as a truck driver.

This basic misconception by the hearing officer is also apparent in her acceptance of the testimony of claimant's employment expert, which likewise assumed, contrary to the June 1975 award and without a further medical foundation, that claimant's physical limitations resulting from the 1970 injury would not permit him to return to his prior employment as a truck driver.

For the foregoing reasons the award must be set aside. However, in view of the probability of further hearings in this matter, we deem it advisable to comment on the appropriateness of the appellant's utilization of a petition for rearrangement pursuant to the provisions of A.R.S. § 23–1044F(2) in seeking a change in his earning capacity award. Notwithstanding claimant's express representation in his answering brief filed in this Court that he is relying on subsection F(2), and therefore does not need to show a change in his physical condition, he has neither alleged nor attempted to show by evidence any change, external to the claimant, that would be within the cognizance of F(2), such as a change in the availability or requirements of his prior work, or an economic change of such a nature that it would affect his ability to obtain such employment or continue performing it. *See, e. g., Fletcher v. Industrial Commission,* 120 Ariz. 571, 587 P.2d 757 (App.1978); *Oquita v. Industrial Commission,* 120 Ariz. 610, 587 P.2d 1187 (App.1978). Rather, from an examination of the hearing transcript, it is apparent that the change urged by the claimant is in actuality a change in physical condition, *i. e.,* that he now suffers disabling pain resulting from the 1970 injury which he did not previously suffer. Of course, if the disabling pain has resulted from the effects of the 1970 injury, it would be a compensable physical disability. *See Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 (1976). Whether such pain is causally related to the industrial injury is a medical question, and as such is not subject to proof by a non-medical witness. *See Bilbrey v. Industrial Commission,* 27 Ariz.App. 473, 556 P.2d 27 (1976); *Kucko v. Industrial Commission,* 116 Ariz. 530, 570 P.2d 217 (App.1977).

The award is set aside.

EUBANK, P. J. and FROEB, J., concur.